**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laetitia Smet, | No. MC-20-00055-PHX-JJT |
| Petitioner, | **ORDER** |
| v. | |
| United States of America, | |
| Respondent. | |

At issue is Respondent United States of America's Motion to Summarily Deny Petitions to Quash IRS Summonses and to Enforce IRS Summonses (Doc. 14, Mot.). On March 1, 2021, the Court granted Respondent's Motion for Order to Show Cause (Doc. 16), and on March 5, 2021 Petitioners entered a Response to Order to Show Cause (Doc. 17, Resp.). Subsequently, Respondent filed a Reply (Doc. 18, Reply).

**I.    BACKGROUND**

Laetitia Smet and her deceased husband, Jean-Philippe Smet (better known as French rock n' roll artist Johnny Halliday), are French citizens who also maintained a place of residence in the United States. (Doc. 1, "MBNA Petition" ¶ 2; MC-20-00058, Doc. 1, "Bank of America Petition" ¶ 2; Doc. 2 at 2.)

In October 2019, pursuant to the Convention between the Government of the United States of America and the Government of the French Republic for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital (the "DTC"), the IRS's Exchange of Information Office received a request

("Request") from the French Competent Authority for information regarding Petitioners' financial accounts in the United States. (Mot. at 3.) In short, the DTC provides for the exchange of tax and financial information between France and the United States, but neither country is obligated to provide information that cannot be obtained under the laws of either country. The Request indicates that French tax authorities are investigating Petitioners' income and wealth tax for 2017. (Mot. at 2.) Tina Masuda, Program Manager of the IRS's Exchange of Information Office, reviewed the Request and determined that it was proper, so on September 18, 2020 the IRS issued third-party summonses to Bank of America, NA (Bank of America Petition, Ex. A) and MBNA FIA Card Services (MBNA Petition, Ex. A). (Mot. at 3; Declaration of Tina B. Masuda, Dec. 4, 2020 ("Masuda Dec.") ¶ 7.) Both summonses request that the recipient institutions make available Petitioners' account documents from the 2017 tax year. (MBNA Petition, Ex. A; Bank of America Petition, Ex. A.)

Petitioners claim that they were not French residents in 2017, so executing the summonses constitutes an abuse of process by the French tax authorities. (Bank of America Petition ¶ 7; MBNA Petition ¶ 7.) On October 6, 2020, the Smets, by and through counsel, filed a Petition with this Court to Quash the MBNA Summons (MBNA Petition), and on October 14, 2020, they filed a Petition to Quash the Bank of America Summons (Bank of America Petition). Respondent filed a Motion to Summarily Deny Petitions to Quash IRS Summonses and to Enforce IRS Summonses (Doc. 14). The Court now resolves that Motion.

## II. LEGAL STANDARD

Under 26 U.S.C. § 7609, when the IRS issues a third-party summons, only certain persons are entitled to bring a proceeding to quash the summons. The summoned third party is never entitled to commence an action to contest the viability of an IRS summons, but if under § 7609(a), notice of a third-party summons is required to be given to any person identified in the summons, the person who receives such notice is entitled under § 7609(b)(2) to bring a proceeding to quash the summons, so long as certain requirements are met.

First, pursuant to § 7609(b)(2)(A), the petition to quash must be filed not later than the 20th day after the notice is given. *Ponsford v. United States*, 771 F.2d 1305, 1309 (9th Cir. 1985); *see also Fisher v. United States*, No. 13-mc-00056, 2013 WL 7137477, at *2 (D. Ariz. Dec. 10, 2013) ("Under Ninth Circuit precedent, Petitioner's failure to comply with the twenty-day limit in 26 U.S.C. § 7609(b)(2)(A) strips the district court of jurisdiction."). Second, the petitioner must send copies of the petition to the summoned person and the office designated by the Secretary of the Treasury by registered or certified mail. 26 U.S.C. § 7609(b)(2)(B). Third, the petition to quash must be filed in the district where the summoned party "resides or is found." 26 U.S.C. § 7609(h). Furthermore, under § 7609(b)(2)(A) the Government may "seek to compel compliance with the summons" whenever a petition to quash the summons has been filed.

The IRS enjoys broad information-gathering authority under 26 U.S.C. § 7602, which also applies to information sought in response to treaty requests. *Lidas, Inc. v. United States*, 238 F.3d 1076, 1081 (9th Cir. 2001). Where the Government seeks enforcement of a summons under 26 U.S.C. § 7602, it need only demonstrate "good faith" in issuing the summons. *Lidas*, 238 F.3d at 1081-82. The Government can make a *prima facie* showing of good faith by meeting the four factors set in *United States v. Powell*, 379 U.S. 48, 57-58 (1964). *Powell* requires the Government to show that: (1) the investigation will be conducted pursuant to a legitimate purpose; (2) the information sought may be relevant to that purpose; (3) the information sought is not already in the IRS's possession; and (4) the administrative steps required by the Internal Revenue Code have been followed. *Id.* The Government's burden at this stage is "a slight one," and may be satisfied by a declaration from the investigating agent. *Crystal v. United States*, 172 F.3d 1141, 1143-44 (9th Cir. 1999) (internal quotations omitted). Where the IRS has issued summonses at the request of a tax treaty partner, the Government need not establish the good faith of the requesting nation, so long as it acts in good faith under *Powell* and complies with any applicable statutes. *United States v. Stuart*, 489 U.S. 353, 370 (1989).

After the Government makes its *prima facie* case, the burden shifts to the party resisting enforcement, who must show that enforcement would be an "abuse of process." *Fortney v. United States*, 59 F.3d 117, 120 (9th Cir. 1995). To carry this burden, the challenger must allege "specific facts and evidence" in support of the allegations. *Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1392 (9th Cir. 1985).

## III.   ANALYSIS

### A.   The MBNA Summons

Because the United States seeks to enforce the summons, it carries the initial burden of establishing the *Powell* factors. It may satisfy its burden by a declaration from the investigating agent that the *Powell* requirements have been met. *Crystal*, 172 F.3d at 1144 (internal citations omitted). If Respondent meets this burden, Petitioners must then demonstrate a lack of good faith on the part of the IRS. *Id.*

The United States asserts that it has met the requirements articulated in *Powell* and asks the Court to enforce the summons directed at MBNA. (Mot. at 8.) In support of its Motion, the Government submits a declaration from Tina Masuda, Program Manager of the IRS's Exchange of Information Office. (Mot., Masuda Dec.)

#### 1.   The *Powell Factors*

##### a.   **Legitimate Purpose**

Under *Powell*, the Government must first show that the investigation is being conducted for a legitimate purpose. 379 U.S. at 57-58. The United States argues that compliance with a treaty partner's proper request for information itself stands as legitimate purpose. (Mot. at 8.) Indeed, this position is consistent with the conclusions of other courts, including those in the Ninth Circuit. *See, e.g.*, *United States v. Hiley*, No. 07-cv-1353, 2007 WL 2904056, at *4 (S.D. Cal. Oct. 2, 2007) (citing *United States v. A.L Burbank & Co.*, 525 F.2d 9, 16-17 (2d Cir. 1975)).

Petitioners argue that the IRS and French tax authorities are in violation of this factor, because since they claim that they were not residents of France in 2017, and thus executing the summons would expand the French tax authorities' power to obtain

information in violation of Article 27 of the DTC. (Doc. 2 at 5.) Petitioners' Memorandum of Law in Support of the Petition to Quash Summons cites only one case—*Mazurek v. United States*, 271 F.3d 226, 232 (5th Cir. 2001). (Doc. 2 at 7.) Had Petitioners read *Mazurek* more closely, they would have noted that the Fifth Circuit rejected the very residency argument they put forth here. As the *Mazurek* Court reasoned, "an assessment of what would be allowed or disallowed under a foreign nation's law is unnecessary," so, "even if under French law the [French tax authority] was not permitted to continue its investigation pending final determination of the residency issue, the [French tax authority] retains the substantive right to procure the requested information." 271 F.3d at 233-34 (considering the Court's holding in *Stuart*, 489 U.S. at 370).

Petitioners' argument is without legal merit, and Respondent has established a legitimate purpose.

### b.  Relevance

Next, the Government must show that the IRS's inquiry is relevant to the legitimate purpose. *Powell*, 379 U.S. at 57. The Supreme Court has interpreted § 7602 to allow the IRS to "obtain items of even *potential* relevance to an ongoing investigation," regardless as to whether the documents it seeks are relevant in any "technical, evidentiary sense." *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984) (emphasis in original). Because the French tax authorities are interested in Petitioners' assets and income which they failed to report, the information sought in the summonses meets the *Powell* relevance standard. (*See* Masuda Dec. ¶ 6.)

### c.  Possession of Information

Third, *Powell* requires that the "information sought is not already within the [IRS] Commissioner's possession." 379 U.S. at 57-58. Petitioners argue that they have already provided the requested documents to the French tax authorities. (Resp. at 3.) However, whether the French tax authorities possess the documents is irrelevant. *Powell* directs the Court to ask whether the documents are in the IRS's possession, not whether they are in the French tax authority's possession. Petitioners do not claim to have provided the

requested documents to the IRS. Furthermore, as Respondent notes in its Reply, Petitioners do not provide any support for their allegation that the French tax authorities are already in possession of the requested documents. (Reply at 2.) Additionally, after Petitioners initiated their action, the IRS reconfirmed with the French tax authorities that they do not already possess the information sought. (Masuda Dec. ¶ 16.) Absent any support for Petitioners' assertion, the Government satisfies this factor of the *Powell* test.

### d. Compliance with Administrative Steps

Finally, the Government must show that it has followed the Internal Revenue Code's administrative steps. *Powell*, 379 U.S. at 58. The United States argues that the IRS followed the required administrative steps in serving the summons in accordance with 26 U.S.C. §§ 7603(a) and 7609(a)(1), as well as providing notice to Petitioners in accordance with § 7609(a)(2). (Mot. at 9; Masuda Dec. ¶¶ 8, 9 and Exs. A, B.) Ms. Masuda's Declaration also states that the IRS complied with the Internal Revenue Code's administrative steps in issuing and serving the summonses on MBNA and Bank of America. (Masuda Dec. ¶ 10.) Petitioner does not raise any arguments to undercut this factor. The fourth *Powell* factor is satisfied.

### 2. Abuse of Process

Because the Government has met its burden of establishing a *prima facie* case for enforcing the third-party summons, the burden shifts to Petitioners to show that enforcement of the summons would be an "abuse of process." *Fortney*, 59 F.3d at 120 (9th Cir. 1995). "Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge." *United States v. Clarke*, 573 U.S. 248, 254 (2014).

Petitioners argue that the French tax authorities have committed an abuse of process because they have no evidence showing that the Smets were residents of France in 2017. (Doc. 2 at 4.) However, Petitioners fail to cite any case law in either their Memorandum of Law in Support of the Petition to Quash Summons (Doc. 2) or their Response to the Court's Order to Show Cause (Doc. 17) to support their argument. Instead, this time without even

citing *Mazurek*, Petitioners persist in their *Mazurek*-derived contention that the United States should wait to disclose Petitioners' financial information to the French tax authorities until a French Court declares them French residents. (Resp. at 3.) As the Court explained above, this argument failed in *Mazurek*, and is equally unpersuasive here. *Mazurek*, 271 F.3d at 231, 232 ("It does not follow, simply because Mazurek challenges the [French tax authority's] residency determination, that the [French tax authority's] investigation is being conducted for an improper purpose.").

Further, even if Petitioners could identify case law in support of their argument, they fail to provide any evidence to support their assertion that they were *not* residents of France. Ms. Masuda's Declaration explicitly states that "the French tax authority's information shows [the Smets] were in France [in 2017] for the requisite period for tax liability under French law." (Masuda Dec. ¶ 6.) Petitioners offer no evidence to the contrary.

The Court finds that Petitioners have not shown any specific facts or circumstances that plausibly show an abuse of process on the part of the Government.

**B.     The Bank of America NA Summons**

The Government argues that because Petitioners did not file the Petition to Quash the Bank of America Summons within the 20-day period required under 26 U.S.C. § 7609(b)(2)(A), the Court lacks jurisdiction over that Petition. (Mot. at 6.) The Court agrees.

As stated above, under § 7609(b)(2)(A) Petitioners must file the petition to quash the summons "not later than the twentieth day following the date that notice of the summons was served or mailed." *Fisher*, 2013 WL 7137477, at *1 (internal citations omitted).

Here, the IRS mailed Petitioners notice of the Bank of America Summons on September 18, 2020. (Bank of America Petition ¶ 7(a); Masuda Dec. ¶¶ 8, 9; Mot. Exs. A, B.) Accordingly, Petitioners had until October 8, 2020 to institute a proceeding to quash. Petitioner failed to do so until October 14, 2020, the twenty-sixth day after notice was mailed. Petitioner does not contest that the notice was indeed mailed on September 18.

Ninth Circuit precedent makes clear that Petitioner's failure to comply with the twenty-day limit set forth in § 7609(b)(2)(A) strips the district court of jurisdiction. *See, e.g.*, *Ponsford*, 771 F.2d at 1309. Thus, the Court must dismiss the Bank of America Petition. Fed. R. Civ. P. 12(h)(3).[1]

**IT IS THEREFORE ORDERED** granting the Motion to Summarily Deny Petitions to Quash IRS Summonses and to Enforce IRS Summonses (Doc. 14) with Respect to the MBNA Petition (Doc. 1).

**IT IS FURTHER ORDERED** dismissing the Petition to Quash the Bank of America Summons for lack of jurisdiction (MC-20-00058, Doc. 1).

**IT IS FURTHER ORDERED** directing the Clerk of Court to close this matter.

Dated this 29th day of October, 2021.

Honorable John J. Tuchi
United States District Judge

---

[1] Because the Court lacks jurisdiction, it cannot deny the Petition to Quash the summons issued to Bank of America. Accordingly, with regard to the Bank of America NA Summons, the Court construes Respondent's Motion as a Motion to Dismiss.